MGD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Clarence Wayne Dixon,

Plaintiff,

v.

Arizona Department of Corrections, Rehabilitation & Reentry (ADCRR), et al.,

Defendants.

No. CV-22-00604-PHX-DJH (JFM)

**ORDER**

Plaintiff Clarence Wayne Dixon, who is represented by counsel and confined to a Death Watch cell in the ADCRR's Browning Unit, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131, et seq., and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794. (Doc. 1.)  Also before the Court is Plaintiff's Emergency Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 4).[1]

**I.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

---

[1] The Court will address the Emergency Motion by separate Order once briefing is complete.

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

**II.     Complaint**

In his five-count Complaint, Plaintiff sues ADCRR Director David Shinn, ASPC-Browning Unit Warden Travis Scott, and ASPC-Florence Warden James Kimble, all in their official capacities, and "John Does," who are unknown personnel, staff, or agents of ADCRR or the State of Arizona and who have participated or will participate in Plaintiff's incarceration on Death Watch for 35 days prior to his execution.  Plaintiff seeks declaratory and injunctive relief.

Plaintiff alleges the following facts:  Plaintiff is scheduled to be executed on May 11, 2022, pursuant to a warrant issued by the Arizona Supreme Court.  (Doc. 1 ¶ 1.)  Upon the Arizona Supreme Court's issuance of the execution warrant on April 5, 2022, Plaintiff was transported from his close custody cell in Central Unit to a Death Watch cell in the

Browning Unit, where he will remain until he is executed pursuant to ADCRR's execution protocol, outlined in Department Order (DO) 710.  (*Id.* ¶ 2.)

Plaintiff is 66 years old, visually disabled, physically frail, and severely mentally ill. (*Id.* ¶ 1.) Plaintiff has glaucoma and was declared legally blind in both eyes in 2015 and is substantially limited in major life activities such as reading and writing, which makes him a qualified individual with disabilities within the meaning of the Americans with Disabilities Act (ADA). (*Id.* ¶¶ 18, 19.) ADCRR has designated Plaintiff as having "Medical ADA Restrictions/Special Needs" due to his blindness, and ADCRR has provided accommodations to allow Plaintiff to engage in activities of daily living, including the assistance of a blind attendant or aide (another prisoner) and use of several auxiliary aids such as a folding cane, cassette tape recorder, tape player, magnifying ocular eye piece, talking book, talking clock, a tablet, and UV sunglasses. (*Id.* ¶¶ 20, 21.) The blind attendant or aide has helped Plaintiff navigate his surroundings by escorting him to and from medical appointments and visitation; completing prison forms and other paperwork, including health needs requests (HNRs); locating items in Plaintiff's cell; identifying what and who are in his immediate surroundings; and reading and transcribing correspondence, including letters, emails, and legal mail. (*Id.* ¶ 21.) Plaintiff has been assigned a blind aide since 2017 as part of the ADA accommodations provided by ADCRR. (*Id.* ¶ 82.)

Plaintiff is also seriously mentally ill (SMI) and is diagnosed with paranoid schizophrenia. (*Id.* ¶ 23.) During criminal proceedings in 1978, Plaintiff was found to be incompetent and not guilty by reason of insanity, and civil commitment proceedings were ordered. (*Id.* ¶ 27.) Before the civil commitment proceedings began, the murder for which Plaintiff is scheduled to be executed occurred. (*Id*.) During postconviction proceedings, Plaintiff was found to suffer from significant cognitive impairments, severe depression, paranoia, and perceptual disturbances, and he was diagnosed with a psychotic disorder, schizophrenia. (*Id.* ¶ 32.) Plaintiff was recently reevaluated by Dr. Amezcua-Patino, who concluded that Plaintiff is incompetent to be executed because his "capacity to understand

the rationality of his execution is contaminated by the schizophrenic process . . . ." (*Id.* ¶ 35.) Dr. Amezcua-Patino has concluded that Plaintiff's mental illness puts him at heightened risk of suffering physical and psychiatric harm on Death Watch, asserting that "deathwatch isolation is analogous to psychological torture that is highly likely to lead to psychiatric decompensation." (*Id.* ¶ 36.) Dr. Amezcua-Patino specifically determined that in Plaintiff's case, the psychosocial and physical stress related to increased isolation, lack of any privacy, and 24-hour supervision is likely to worsen his delusional and paranoid thinking . . . . [and] in the context of his blindness, deathwatch becomes a new challenge with new uncertainties that will challenge all of his acquired abilities to manage his blindness." (*Id.*)

Prior to Plaintiff's transfer to Death Watch, ADCRR informed Plaintiff's counsel that it would allow Plaintiff to have continued access to and use of nine physical and auxiliary aids such as his folding cane, cassette tape recorder, magnifying ocular eye piece, talking book, and tablet with dime feature, as well as access to and use of his current blind aide, fellow Death Row Inmate Brad Nelson, who would be transferred with Plaintiff and housed in the adjoining cell. (*Id.* ¶ 42.) But Nelson declined to serve as Plaintiff's blind aide in a Death Watch setting as did a second prisoner identified by ADCRR. (*Id.* ¶ 46.) After the second prisoner declined to serve as Plaintiff's blind aide, ADCRR's counsel informed Plaintiff's counsel "this responsibility now falls to your office to designate personnel to perform this task." (*Id.* ¶ 48.) Without a blind aide, Plaintiff is severely limited in his activities of daily living, including reading, writing, orienting himself to his surroundings, and corresponding with others, including members of his legal team. (*Id.* ¶ 82.)

While on Death Watch, Plaintiff is under 24-hour continuous observation by corrections officers and cameras, and staff write down Plaintiff's "activities and behavior until the sentence of death is imposed" in an observation record. (*Id.* ¶ 56.) Plaintiff is not allowed to possess personal property other than select clothing items, several approved

1   auxiliary aids, one box each of legal and religious materials, a pencil and paper, and a book
2   or periodical. (*Id.* ¶ 57.)

3         DO 710's Death Watch protocol subjects Plaintiff to 35 days of solitary confinement
4   while he awaits his death. (*Id.* ¶ 72.) Solitary confinement has been shown to have adverse
5   psychological and physiological effects on a prisoner, and individuals with underlying
6   mental health conditions, such as Plaintiff, are at an increased risk of suffering harm under
7   DO 701's Death Watch Protocol. (*Id.* ¶¶ 73-75.) People in solitary confinement "are
8   subjected to decreased meaningful and positive contact with others, limited stimuli inside
9   a small cell, and unpredictable loud noises," and those extremes are exacerbated for blind
10  individuals. (*Id.* ¶ 79.)

11        DO 710's Death Watch protocol subjects Plaintiff to "persistent reminders of his
12  impending execution, simultaneous sensory deprivation and sensory overload (including
13  the fear of unpredictable and unfamiliar noises and voices), the physical danger of
14  navigating unfamiliar surroundings as a blind man, continuous observation by those he
15  cannot see, and he faces an increased risk of paranoia, psychosis, self-harm, and
16  suicidality." (*Id.* ¶ 86.) "The compounding effects of knowing he is being continuously
17  observed and filmed, being unable to see the corrections officers who are watching him,
18  and being subjected to unpredictable routines, unfamiliar noises, and a distorted sense of
19  time is analogous to 'hooding' torture used to deprive prisoners of war of visual
20  environmental cues." (*Id.*) Subjecting Plaintiff to continuous observation, even when
21  using the toilet, places Plaintiff at heightened risk of suffering humiliating and painful
22  gastro-intestinal discomfort. (*Id.* ¶ 92.)

23        DO 710's Death Watch protocol is inconsistent with evolving standards of decency.
24  (*Id.* ¶ 94.) Defendants are aware of the substantial risk of harm Plaintiff is experiencing
25  on Death Watch because they are aware of his legal blindness, mental illness, and need for
26  an ADA-mandated blind aide. (*Id.* ¶ 95.) DO 710's Death Watch protocol is not narrowly
27  tailored to further a legitimate State interest, detaining Plaintiff on Death Watch is not
28  necessary and not narrowly tailored to prevent a risk of self-harm and actually increases

the risk of self-harm, and Defendants have not reasonably abated the risk of serious harm to Plaintiff.  (*Id.* ¶¶ 97-100.)

Count One asserts a violation of Plaintiff's Eighth Amendment rights by subjecting prisoners under a sentence of death to DO 710's Death Watch protocol.  Plaintiff alleges that DO 710's Death Watch protocol is facially unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution and DO 710's Death protocol is unconstitutional as applied to Plaintiff, who is legally blind and suffers from paranoid schizophrenia.  (*Id.* ¶¶ 107-108.)

Count Two asserts a claim of deliberate indifference to Plaintiff's health and safety under the Eighth Amendment.  Plaintiff alleges that ADCRR is aware of Plaintiff's legal blindness, mental illness, and need for an ADA-mandated blind aide, which ADCRR has provided in the past, and Plaintiff's move to Death Watch places him at increased risk of psychological and physical suffering.  (*Id.* ¶ 111.)

Count Three asserts a violation of Title II of the ADA.  Plaintiff alleges that he is a qualified individual with disabilities within the meaning of the ADA, ADCRR's services, programs, and activities are covered by the ADA, and Defendants have discriminated against Plaintiff by failing to accommodate him and make a reasonable modification to their policies, procedures, and/or practices to permit Plaintiff access to his blind aide while on Death Watch prior to his execution.  (*Id.* ¶¶ 117-120.)

Count Four asserts of violation of Section 504 of the Rehabilitation Act (RA) of 1973. Plaintiff alleges that he is a qualified individual with a disability within the meaning of the RA, that ADCRR, by receiving federal financial assistance, is subject to the requirements of Section 504 of the RA, and Defendants have discriminated against Plaintiff by failing to accommodate him and making a reasonable modification to their policies, procedures, and/or practices to permit Plaintiff access to his blind aide while on Death Watch prior to his execution.  (*Id.* ¶¶ 134-138.)

Plaintiff denominates a Fifth Cause of Action as one for declaratory and injunctive relief.  (*Id.* ¶¶ 142-148.)

### III. Failure to State a Claim

#### A. Count Five

Plaintiff's Count Five is not a cause of action but is a request for declaratory and injunctive relief. As such, Plaintiff's Fifth Cause of Action fails to state a claim and will be dismissed.

#### B. Doe Defendants

Plaintiff does not say in what capacity he sues the unnamed Doe Defendants. Because Plaintiff is only seeking declaratory and injunctive relief, he does not appear to be suing the Doe Defendants in their individual capacities for monetary damages. Moreover, Plaintiff has not alleged any facts showing that any Doe Defendant was personally involved in the deprivation of his civil rights, which is necessary to impose individual liability. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (for a person to be liable in his or her individual capacity, a plaintiff "must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights"). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep t of Soc. Servs.*, 436 U.S. 658, 694 (1978).

As set forth in Section V *infra*, Plaintiff has sufficiently stated claims against Defendants Shinn, Scott, and Kimble in their official capacities. Because Shinn, Scott, and Kimble are the proper respondents to Plaintiff's official capacity claims, the Court will dismiss the Doe Defendants.

. . . .

. . . .

. . . .

### IV.   Claims for Which an Answer Will be Required

####   A.   Eighth Amendment Claims—Counts One and Two

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety."  *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Id.* at 835.  In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* at 837 (emphasis added).

Plaintiff has sufficiently alleged Eighth Amendment claims against Defendants Shinn, Scott, and Kimble in their official capacities in Counts One and Two, and they will be required to answer these claims.

####   B.   ADA and RA—Counts Three and Four

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state an ADA claim, a plaintiff must demonstrate that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)) (alteration in *McGary*), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The RA "is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance." *Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001) (internal quotation omitted), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). Because the ADA has a broader scope, the Ninth Circuit analyzes both Acts under an ADA standard. *See Armstrong*, 275 F.3d at 862; *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. . . . Thus, courts have applied the same analysis to claims brought under both statutes.").

Plaintiff has sufficiently stated claims in Counts Three and Four against Defendants Shinn, Scott, and Kimble in their official capacities, and they will be required to answer these claims.

**IT IS ORDERED:**

(1) Count Five of the Complaint (Doc. 1) is **dismissed** without prejudice.

(2) Defendants John Does are **dismissed** without prejudice.

(3) Defendants Shinn, Scott, and Kimble must answer Counts One through Four of the Complaint (Doc. 1) or otherwise respond by appropriate motion by **Wednesday, April 20, 2022**.

(4) The Clerk of Court must terminate the reference to Magistrate Judge James F. Metcalf.

Dated this 14th day of April, 2022.

Honorable Diane J. Humetewa
United States District Judge

TERMPSREF